# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| ANTHONY HINES, ) | |
| ) | |
| Petitioner, ) | Case No. 3:05-0002 |
| ) | Judge Haynes |
| v. ) | |
| ) | |
| WAYNE CARPENTER, Warden, ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM

Before the Court is Petitioner's motion to alter or amend judgment (Docket Entry No. 147). Respondent has not filed a response.

In his motion to alter or amend, Petitioner contends, in sum, (1) that the Court incorrectly denied relief on Petitioner's grand and petit jury discrimination and related ineffectiveness claims based on the belief that Petitioner did not challenge the state courts' finding that there was no systematic discrimination against women in Cheatham County in violation of Duren v. Missouri, 439 U. S. 357 (1979) and (2) that the Court erred in denying relief on Petitioner's claim that he was sentenced to death in violation of Caldwell v. Mississippi, 472 U.S. 320 (1985) because Juror John Ford was improperly told during voir dire that he lacked responsibility for sentencing Petitioner to death.

As this Court previously determined, the Tennessee Criminal Court of Appeals reasonably applied clearly established federal law and reached a reasonable determination based upon the facts in the state record in concluding that Petitioner failed to show that women had been systematically excluded from the venire. (Docket Entry No. 145 at 60-64).

As to Petitioner's <u>Caldwell</u> and related ineffectiveness of counsel claims, Petitioner contends that because Juror John Ford was informed during voir dire that he was not responsible for imposing the death sentence Petitioner is entitled to habeas relief under the Eighth Amendment. Petitioner further contends that, although these claims were not raised before the state courts and therefore procedurally defaulted, because these claims are "substantial" and post-conviction counsel's performance violated <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), procedural default of these claims should be excused under <u>Martinez v. Ryan</u>, 566 U.S. 1 (2012).

Petitioner quotes the following passage from <u>Caldwell</u>:

> In this case, the State sought to minimize the jury's sense of responsibility for determining the appropriateness of death. Because we cannot say that this effort had no effect on the sentencing decision, that decision does not meet the standard of reliability that the Eighth Amendment requires. The sentence of death must therefore be vacated.

472 U.S. 341.

As evidence of a <u>Caldwell</u> violation, Petitioner cites the following colloquy with Juror Ford:

> Q. Would you think, 'Well, if I vote to impose the death penalty, it's my fault that that person's dying, or would you consider it to be his acts that caused him to die in the electric chair?
>
> A. It would be his acts.
>
> Q. It wouldn't be your fault, would it?
>
> A. No, sir.

(Docket Entry No. 147 at 25).

Yet, Petitioner's reliance on <u>Caldwell</u> is misplaced based upon the facts in this action. In <u>Caldwell</u>, "a prosecutor urged the jury not to view itself as determining whether the defendant would

2

die, because a death sentence would be reviewed for correctness by the State Supreme Court." 472 U.S. at 323. The statements in question were as follows:

> "ASSISTANT DISTRICT ATTORNEY: Ladies and gentlemen, I intend to be brief. I'm in complete disagreement with the approach the defense has taken. I don't think it's fair. I think it's unfair. I think the lawyers know better. Now, they would have you believe that you're going to kill this man and they know--they know that your decision is not the final decision. My God, how unfair can you be? Your job is reviewable. They know it. Yet they ...
>
> "COUNSEL FOR DEFENDANT: Your Honor, I'm going to object to this statement. It's out of order.
>
> "ASSISTANT DISTRICT ATTORNEY: Your Honor, throughout their argument, they said this panel was going to kill this man. I think that's terribly unfair.
>
> "THE COURT: Alright, go on and make the full expression so the Jury will not be confused. I think it proper that the jury realizes that it is reviewable automatically as the death penalty commands. I think that information is now needed by the Jury so they will not be confused.
>
> "ASSISTANT DISTRICT ATTORNEY: Throughout their remarks, they attempted to give you the opposite, sparing the truth. They said 'Thou shalt not kill.' If that applies to him, it applies to you, insinuating that your decision is the final decision and that they're gonna take Bobby Caldwell out in the front of this Courthouse in moments and string him up and that is terribly, terribly unfair. For they know, as I know, and as Judge Baker has told you, that the decision you render is automatically reviewable by the Supreme Court. Automatically, and I think it's unfair and I don't mind telling them so." Id., at 21-22.

Id. at 325-26.

Thus, Caldwell presented "the issue whether a capital sentence is valid when the sentencing jury is *led to believe that responsibility for determining the appropriateness of a death sentence rests* not with the jury but *with the appellate court* which later reviews the case." 472 U.S. at 323 (emphasis added). The Supreme Court held, "On reaching the merits, we conclude that it is constitutionally impermissible to rest a death sentence on a determination made by a sentencer who

3

has been led to believe that *the responsibility for determining the appropriateness* of the defendant's death *rests elsewhere.*" Id. at 328-29 (emphasis added).

The Court explained that there were "specific reasons to fear substantial unreliability as well as bias in favor of death sentences when there are state-induced suggestions that the sentencing jury may shift its sense of responsibility to an appellate court." Id. at 330. These reasons were: (1) "Bias against the defendant clearly stems from the institutional limits on what an appellate court can do—limits that jurors often might not understand," id.; (2) "Even when a sentencing jury is unconvinced that death is the appropriate punishment, it might nevertheless wish to 'send a message' of extreme disapproval for the defendant's acts. This desire might make the jury very receptive to the prosecutor's assurance that it can more freely 'err because the error may be corrected on appeal,'" id. at 331 (citation omitted); (3) "Bias could similarly stem from the fact that some jurors may correctly assume that a sentence of life in prison could not be increased to a death sentence on appeal. . . . If the jury understands that only a death sentence will be reviewed, it will also understand that any decision to "delegate" responsibility for sentencing can only be effectuated by returning that sentence," id. at 332; and (4) "Indeed, one can easily imagine that in a case in which the jury is divided on the proper sentence, the presence of appellate review could effectively be used as an argument for why those jurors who are reluctant to invoke the death sentence should nevertheless give in. This problem is especially serious when the jury is told that the alternative decision-makers are the justices of the state supreme court. Id. at 333.

The Supreme Court summarized, "The argument here urged the jurors to view themselves as taking only a preliminary step toward the actual determination of the appropriateness of death—a determination which would eventually be made by others and for which the jury was not

4

responsible." Id. at 336. That is not the factual situation here as Juror Ford was not misled that he was only making a preliminary determination that would eventually be determined by an appellate court. Thus, because Petitioner fails show that these claims are substantial Petitioner is not entitled to relief under Martinez.

Accordingly, for theses reasons, the Court concludes that Petitioner's motion to alter or amend judgment (Docket Entry No. 147) should be denied.

An appropriate Order is filed herewith.

**ENTERED** this the 25th day of August, 2015.

WILLIAM J. HAYNES, JR.
Senior United States District Judge