IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| ANTHONY HINES, | ) |
| Petitioner, | ) Case No. 3:05-0002 |
| | ) Judge Haynes |
| v. | ) |
| WAYNE CARPENTER, Warden, | ) |
| Respondent. | ) |

## MEMORANDUM

Petitioner, Anthony Hines, filed this action under 28 U.S.C. § 2254 seeking the writ of habeas corpus to set aside his conviction of first degree murder for which Petitioner received the death sentence. The Court granted the Respondent's motion for summary judgment and dismissed the petition. (Docket Entry No. 146). Pursuant to 28 U.S.C. § 2253(c), the Court granted a Certificate of Appealability ("COA") on all claims related to the death sentence. Id.

Before the Court is the Sixth Circuit's remand (Docket Entry No. 152) for this Court to conduct an individualized determination of whether a COA is warranted under Slack v. McDaniel, 529 U.S. 473 (2000). Petitioner also filed a motion to file application for certificate of appealability by October 30, 2015 (Docket Entry No. 153). Yet, the Court may "determine a COA without an application from Hines." (Docket Entry No. 152, Sixth Circuit Order at 3, citing Castro v. United States, 310 F.3d 900, 902-03 (6th Cir. 2002)).

Under 28 U.S.C. § 2253(c)(2), "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." The certificate of appealability must "indicate which specific issue or issues satisfy th[is] showing." 28 U.S.C. § 2253(c)(3). Thus, "[t]o obtain a COA under § 2253(c), a habeas prisoner must make a substantial

showing of the denial of a constitutional right, a demonstration that . . . includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" Slack, 529 U.S. at 483-84 (citation and internal quotation marks omitted). District Courts are discouraged, even in capital cases, from issuing blanket grants or denials of certificates of appealability. Porterfield v. Bell, 258 F.3d 484(6th Cir. 2001); Murphy v. Ohio, 263 F.3d 466 (6th Cir. 2001); Frazier v. Hufman, 348 F.3d 174 (6th Cir. 2003).

"Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Id. at 484. Yet, when a district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, "a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Therefore, "[w]here a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." Id.

The claims below are presented in the order that they were addressed in the Court's Memorandum (Docket Entry No. 145). Initially, the Court addressed Petitioner's request for an evidentiary hearing on his claims under Trevino v. Thaler, __ U.S.__, 133 S. Ct. 1911 (2013) and Martinez v. Ryan, 566 U.S. 1 (2012), as well as his claim of actual innocence.

**A.1. Petitioner's Medical Proof.** As grounds for warranting an evidentiary hearing under Trevino and Martinez, Petitioner submitted medical proof on his mental condition, reflecting mental evaluations that are almost three decades after the crime was committed. Because such medical proof is not probative, as the expert proof in the state record is ample to evaluate any omission of Petitioner's trial and post conviction counsel, the Court concludes that Petitioner has not made a substantial showing of the denial of a constitutional right, and therefore a COA will not issue with respect to his claim for an evidentiary hearing based on Trevino and Martinez.

**A.2. Petitioner's DNA and Fingerprint Proof.** Petitioner cites the results of DNA testing that show that the male DNA on the victim's underwear is not Petitioner's DNA. Yet, this Court determined that given the State's proof against Petitioner and that there was no evidence that this crime involved sexual intercourse, Petitioner's DNA proof did not warrant a hearing or habeas relief. Although the Court believes that its resolution of this claim was correct, the Court will grant Petitioner a COA on this claim because reasonable jurists could find the district court's assessment of the constitutional claim debatable or wrong.

As to Petitioner's fingerprint proof, the Court determined that because such photographs were subject to enhancement and distortion, that there was sufficient evidence of guilt, and the Sixth Circuit has not awarded habeas relief based upon proof of the absence of a habeas petitioner's fingerprints at a crime scene, Petitioner's fingerprint proof did not warrant a hearing or habeas relief. Although the Court believes that its resolution of this claim was correct, the Court will grant Petitioner a COA on this claim because reasonable jurists could find the district court's assessment of the constitutional claim debatable or wrong.

The Court did set an evidentiary hearing on a TBI laboratory report that was ambiguous on whether a swab taken from the victim tested positive for semen. To date, the proof reflects that the several swabs taken from the victim did not contain semen. Although the Court believes that its resolution of this claim was correct, the Court will grant Petitioner a COA on this claim because reasonable jurists could find the district court's assessment of the constitutional claim debatable or wrong.

**A.3. Petitioner's Other Suspects Proof.** As to Petitioner's implicating Tommy Sells and Ken Jones as possible murderers, the Court concluded that Petitioner's factual proof did not warrant an evidentiary hearing or habeas relief, noting that the state courts found Petitioner's proof and theory of another suspect to be "far-fetched." (Docket Entry No. 45 at 39). Nor did the declarations of two emergency medical technicians warrant an evidentiary hearing. Accordingly, the Court concludes that Petitioner has not made a substantial showing of the denial of a constitutional right, and therefore a COA will not issue with respect to Petitioner's other suspects proof.

**A.4. Petitioner's Trial and Post Conviction Counsel Declarations.** As to Petitioner submitting the declarations of his trial and post conviction counsel, as additional bases for an evidentiary hearing, the Court concluded that for the reasons stated on Petitioner's proof for an evidentiary hearing Petitioner's declarations from his prior counsels did not warrant an evidentiary hearing. Although the Court believes that its resolution of this claim was correct, the Court will grant Petitioner a COA on these claims in relation to Petitioner's DNA and fingerprint claims because reasonable jurists could find the district court's assessment of the constitutional claims debatable or wrong.

**C.1.a. Sufficiency of the Evidence and Related Claims.** Petitioner asserts that in violation of the Sixth, Eighth, and Fourteenth Amendments the State's proof was insufficient to support his guilt or his death sentence; that his death sentence was based on a felony-murder aggravating circumstance that duplicated the jury's guilt finding and failed to meaningfully narrow the class of persons eligible for the death penalty; and that the jury weighed an unconstitutional "heinous, atrocious, or cruel" aggravating circumstance when imposing the death sentence. The Court concluded that based upon the proof the state courts could reasonably have concluded that the state's proof supported Petitioner's conviction of first degree murder; that given the nature of the victim's repeated hunting knife wounds to her vagina, the state court's decisions that Petitioner was guilty of torture were reasonable applications of federal law; and that given the nature of the victim's wounds and the state's other proof, the jury and Tennessee Supreme Court had ample alternative bases, other than Petitioner's prior assault conviction and felony theft of the victim's automobile, to justify Petitioner's death penalty sentence. (Docket Entry No. 145 at 51-52). Accordingly, the Court concludes that Petitioner has not made a substantial showing of the denial of a constitutional right, and therefore a COA will not issue with respect to this claim.

**C.1.b. Ineffective Assistance of Counsel Claims.**

**C.1.b.1. Ineffective Assistance of Trial Counsel Claims:**

**i. Competency of Trial Counsel.** Addressing this claim, the Court grouped the interrelated claims 11 a, c, and f, that challenge the competency of Petitioner's trial counsel, namely that Petitioner's trial counsel lacked the experience of trying a death penalty case; that Petitioner's trial counsel could not represent Petitioner and maintain his practice; that Petitioner's trial counsel failed to pursue and advise Petitioner on a guilty plea; and that Petitioner's trial counsel failed to

develop and pursue a comprehensive defense theory for the guilt/innocence phase of the trial. (Docket Entry No. 145 at 53-55). The Court concluded that the state courts reasonably determined that these claims lacked factual merit. Accordingly, the Court concludes that Petitioner has not made a substantial showing of the denial of a constitutional right, and therefore a COA will not issue with respect to this claim.

**ii. Failure to Challenge the Jury Panel.** For this claim, Petitioner contends that his trial counsel was ineffective for failing to allege that women were underrepresented in the Cheatham County venire for the petit jury, grand jury, and as forepersons of the grand jury, and his related claim is that he was denied his rights to due process, equal protection, and to juries selected free from discrimination and from a fair cross-section of the community, given discrimination against women in the selection of the petit jury, the grand jury, and the grand jury foreperson. The Court concluded that Petitioner failed to show that the state appellate court erred in ruling that the jury selection process was not discriminatory and further concluded that Petitioner's freestanding claim on exclusion of women from the grand and petit juries, as well as grand jury foreperson, also lacked merit. (Docket Entry No. 145 at 64). Although the Court believes that its resolution of these claims was correct, the Court will grant Petitioner a COA on these claims because reasonable jurists could find the district court's assessment of the constitutional claims debatable or wrong.

**iii. Ineffective Cross Examination of Jones.** This claim pertains to Petitioner's claims that his trial counsel were ineffective in failing to interview and effectively cross-examine Ken Jones, to object to Sheriff Weakley's participating in the voir dire of prospective jurors, to discover impeachment evidence, and were ineffective because of their lack of experience and resources. The Court concluded that this claim was reasonably decided by the state courts applying

6

clearly established federal law. Accordingly, the Court concludes that Petitioner has not made a substantial showing of the denial of a constitutional right, and therefore a COA will not issue with respect to these claims.

**iv. Failure to Acquire Forensic Evidence.** For this claim, Petitioner alleges that his counsel failed to view the crime scene and to have the forensic evidence collected at or from the crime scene or victim to be analyzed. The Court concluded that the state courts reasonably rejected the facts cited for the other suspect claim and Petitioner failed to present any material and persuasive facts for this claim. Accordingly, the Court concludes that Petitioner has not made a substantial showing of the denial of a constitutional right, and therefore a COA will not issue with respect to this claim.

**v. Failure to Discover Impeachment and Exculpatory Evidence.** For this claim, Petitioner alleges that his counsel was ineffective for failing to discover impeachment evidence that would have undermined the testimony of critical witnesses for the prosecution, and in a closely related claim, Petitioner alleges that his trial counsel failed to request material exculpatory evidence and cites Sheriff Weakley's information about Jones's arrival at the motel earlier in the morning for a tryst with Vernedith White. The Court concluded that Petitioner's counsel filed a motion for exculpatory information as well as all statements against interests in the possession of any law enforcement agency and that the state courts reasonably determined that Petitioner did not show the requisite prejudice under Strickland v. Washington, 466 U.S. 668 (1984) to warrant any habeas relief. Accordingly, the Court concludes that Petitioner has not made a substantial showing of the denial of a constitutional right, and therefore a COA will not issue with respect to this claim.

**vi. Failure to Make Closing Argument.** As to this claim, Petitioner contends that his counsel was ineffective for not making a closing argument at resentencing; that Petitioner's counsel failed to object to improper statements of the state prosecutor during opening and closing arguments; and that the prosecutor engaged in improper closing argument. The Court concluded that the state courts reasonably decided these claims. Although the Court believes that its resolution of these claims was correct, the Court will grant Petitioner a COA on these claims because reasonable jurists could find the district court's assessment of the constitutional claims debatable or wrong.

**C.1.b.2. Counsel's Ineffectiveness on Direct Appeal.** Here, Petitioner asserts that appellate counsel's failures were: failure to preserve the claims in this habeas action in the motion for a new trial and the direct appeal; failure to obtain all necessary portions of the transcript and record for appeal, including the voir dire and the transcript of the motions hearings; failure to include in its brief to the Tennessee Supreme Court all issues raised in the Court of Criminal Appeals; failure to file an adequate petition to rehear before the Tennessee Supreme Court's adverse ruling on Petitioner's appeal; and failure to argue that the Tennessee Supreme Court erred when it concluded that a felony not underlying the felony murder conviction was used to support the felony murder aggravating circumstance. Applying clearly established federal law, the Court concluded that Petitioner's appellate counsel's assessments cannot be judged from the perspective of federal habeas counsel's review of the record decades later. The Court noted that Petitioner's appellate counsel successfully obtained a resentencing hearing and that any omissions of appellate counsel were cured by the extensive state post conviction petition and hearing at which Petitioner presented numerous claims with an extensive evidentiary record at the trial and on appeal. Accordingly, the Court

concludes that Petitioner has not made a substantial showing of the denial of a constitutional right, and therefore a COA will not issue with respect to these claims.

**C.1.b.3. Ineffectiveness of Counsel at Resentencing.** For this claim, Petitioner asserts that his counsel were ineffective at the re-sentencing proceeding and absent counsel's failures, a reasonable probability exists that Petitioner would not have been sentenced to death, citing his counsel's failures (1) to challenge the lack of women representation on petit and grand juries as well as forepersons in Cheatham County; (2) to present evidence of Petitioner's tragic personal history and his drug and alcohol abuse; and (3) to object to the prosecutors' failure to give notice of the aggravating circumstances. The Court concluded that the state courts reasonably determined these claims. Although the Court believes that its resolution of these claims was correct, the Court will grant Petitioner a COA on the first two claims because reasonable jurists could find the district court's assessment of the constitutional claims debatable or wrong.

**C.1.c. Aggravating Circumstances Claims.** As to these claims, Petitioner contends that the application of the felony murder as an aggravating circumstance violated his constitutional rights because he was also convicted of felony murder; in a related claim, Petitioner cites the State's alternative reliance on the "Heinous, Atrocious or Cruel" aggravating factor to uphold his death sentence; and in other related claims Petitioner cites that the Petitioner's prior felony for assault that was used as an aggravating circumstance is based upon an invalid guilty plea and that the jury was improperly instructed that all jurors must agree as to a mitigating circumstance in order to consider it. The Court concluded that Petitioner's aggravating circumstances claim was reasonably decided by the state courts. Accordingly, the Court concludes that Petitioner has not made a substantial

showing of the denial of a constitutional right, and therefore a COA will not issue with respect to these claims.

**C.1.d. Trial Court's Failure to Recuse Claim.** Petitioner's claim involves an alleged violation of his due process rights when the trial court failed to recuse itself after the trial court's rejection of the State's and Petitioner's plea agreement for a life sentence. The Court concluded that Petitioner's claim failed because of the lack of clearly established federal law as determined by the United States Supreme Court. Accordingly, the Court concludes that Petitioner has not made a substantial showing of the denial of a constitutional right, and therefore a COA will not issue with respect to this claim.

**C.2. Procedurally Defaulted Claims.**

    **a. Martinez Claims.** In sum, these claims are for post conviction counsel's failures:

to timely claim in the amended petition that women were underrepresented in the petit jury venire, particularly that for the relevant time period women in Cheatham County were 50.6-50.7% of the population, but comprised only 10-22% of the Cheatham County jury venire from which Hines' juries were drawn as well as exclusion of women as grand jury forepersons;

to assert claims about trial counsel in ¶¶ 11 b, c, d, e, f, g, h, i, k, l, m, n, o, p, q, r, s, t, u, v and about sentencing counsel's failures detailed in ¶¶ 13b, d, e, f, g, h, I, k ,l, m, n, o, q, s, t, u, v, aa, bb, dd, ee of the amended complaint (Docket Entry No. 23 and 23-1);

to present evidence of Petitioner's childhood traumas, poverty with malnutrition, lack of medical care and exposure to toxins, Petitioner' untreated head injuries and mental illness;

to seek a mistrial after jurors were informed that the case had been reviewed on appeal;

to object to the use of restraints upon Petitioner and to secure proof from any available jurors about seeing Petitioner in shackles and handcuffs;

to timely subpoena Norman Johnson, a counselor at the Comprehensive Care Center where Hines was treated, and Bill Andrews, a Juvenile Court Liaison Specialist with the Bureau of Social Services(¶13cc);

to present any claims of ineffective assistance of appellate counsel, including all claims in this action;

to prove that Petitioner's prior conviction was invalid and unconstitutional, or to present a valid defense of intoxication and self defense;

to object to the instructions identified in Claim 19, that jury instructions lessened the prosecution's burden of proof;

to fail to object to the prosecutor's unconstitutional arguments at sentencing to object to the imposition of death after the trial court's rejection of the agreed-upon offer of life under United States v. Jackson, 390 U.S. 570 (1968); and

to object to the trial judge's denial of a continuance after the prosecution's untimely notice of aggravating circumstances.

(Docket Entry No. 109 at 2, 9, 13, 14, 16, 17, 18, 22, 23, 24, 25, 27, 28, 30, 31, 33, 34, 36, 37, 38 and 39).

The Court noted that from the review of the state record and decisions of the Tennessee courts, Petitioner's various counsel presented these claims or a variation thereof. The Court concluded that Petitioner's Martinez claims were not substantial. Accordingly, the Court concludes that Petitioner has not made a substantial showing of the denial of a constitutional right, and therefore a COA will not issue with respect to these claims.

**b. Brady and Gigilio Claims.** For these claims, Petitioner asserts that the State withheld exculpatory evidence and false testimony in violation of Brady v. Maryland, 373 U.S. 83 (1963) and Giglio v. United States, 405 U.S. 150, 153-54 (1972). As to the specifics of these claims, Petitioner alleges:

that Ken Jones and Sheriff Dorris Weakley testified falsely; that the prosecution presented testimony from Dr. Charles Harlan and withheld material exculpatory evidence of his conduct;

that state prosecutors improperly coached state witnesses who testified about Petitioner with a key with the number "9" on it, Petitioner seeming nervous, there was a stain on the shoulder of Petitioner's shirt, and Petitioner had a silver Volvo (Docket Entry No. 23, at ¶ 10f);

that the prosecution presented false testimony of Dr. Harlan of no semen on the victim when Dr. Harlan's file reflects semen was found on the victim;

that post-conviction counsel was unaware of the falsity of Harlan's testimony about time of consciousness and the lack of semen evidence; and

that petitioner has exculpatory evidence of serology test showing a DNA exclusion from the victim's underwear and fingerprint exclusion.

(Docket Entry No. 109 at 11-12, 13-14).

The Court concluded that Petitioner did not satisfy the materiality element for a "substantial" Brady or Giglio claim. Accordingly, the Court concludes that Petitioner has not made a substantial showing of the denial of a constitutional right, and therefore a COA will not issue with respect to this claim.

As to Petitioner's false testimony concerning Dr. Charles Harlan, the Court noted that despite the Court's authorization of discovery, Petitioner failed to show any Brady evidence concerning Dr. Harlan at the time of Petitioner's trial or his 1989 resentencing. Accordingly, the Court concludes that Petitioner has not made a substantial showing of the denial of a constitutional right, and therefore a COA will not issue with respect to this claim.

Lastly, the Court concluded that neither the DNA nor the finger print proof proved Petitioner's actual innocence nor demonstrated prejudice due to any omission of Petitioner's trial counsel for not testing these materials and asserting this claim at trial, sentencing, resentencing or

the post conviction proceeding. Although the Court believes that its resolution of these claims was correct, the Court will grant Petitioner a COA on these claims because reasonable jurists could find the district court's assessment of the constitutional claims debatable or wrong.

**c. Remaining Defaulted Claims.** The Court concluded that the state courts reasonably determined that Petitioner's trial counsel were effective and, thus, that Petitioner could not establish cause due to his appellate counsel's nor post-conviction counsel's performance. The Court adopted the state court rulings that Petitioner's Brady claims lacked materiality and reaffirmed the Court's earlier conclusion that Petitioner's Martinez claims were not substantial to excuse these remaining defaults. (Docket Entry No. 145 at 123). The Court further concluded that neither Petitioner's ineffective assistance of counsel claims nor his Brady and Giglio claims supported a finding of prejudice to excuse his procedural defaults. Id. at 123-24.

As to the remaining defaulted claims not specifically discussed in the Court's Memorandum (Docket Entry No. 145), the Court listed those defaulted claims, along with some of the defaulted claims or a variation thereof that the Court determined were presented by Petitioner's various counsel, id. at 107, in the appendix that is 37 pages in length. These claims and their numerous subparts include Paragraphs 9, 10, 11(b), (e), (i), (l), (n)-(u), 13(b), (c), (t), (u), (w)-(ee), 14, 17, 19, 21(b), (d)-(f), portions of Paragraph 22, Paragraphs 23-24, 26-31, 33-34, portions of Paragraph 35, and Paragraphs 36-38 and 40 of the Second Amended Petition. (Docket Entry Nos. 23, 23-1 and 23-2). The Court determined that these unexhausted claims were procedurally defaulted for purposes of federal habeas corpus review. For the sake of brevity and for the reasons discussed in the Court's Memorandum (Docket Entry No. 145, at 116-124), the Court concludes that because jurists of reason

would not find it debatable that the Court was correct in its procedural ruling, a COA will not issue as to these claims.

Finally, in his motion to alter or amend judgment (Docket Entry No. 147), Petitioner argued that the Court committed clear error in denying relief on Petitioner's defaulted claim that Juror John Ford was improperly told during voir dire that he lacked responsibility for sentencing Petitioner to death. See Docket Entry No. 23-1, Second Amended Petition at ¶ 13w and Docket Entry No. 23-2 at ¶ 22c. The Court concluded that because Petitioner failed to show that this claims was substantial Petitioner was not entitled to relief under Martinez. Accordingly, the Court declines to issue a COA on this claim.

An appropriate Order is filed herewith.

**ENTERED** this the 28th day of September, 2015.

WILLIAM J. HAYNES, JR
Senior United States District Judge